FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 13, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RYAN L.,<br><br>                    Plaintiff,<br><br>      v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>                    Defendant. | No:  4:22-cv-05156-LRS<br><br>ORDER AFFIRMING THE<br>COMMISSIONER'S DECISION |

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the Defendant in this suit.

ORDER - 1

BEFORE THE COURT are the parties' briefs.  ECF Nos. 12, 18.[2]  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney Chad Hatfield.  Defendant is represented by Special Assistant United States Attorney Thomas Chandler.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's brief, ECF No. 12, is denied and Defendant's brief, ECF No. 18, is granted.

## JURISDICTION

Plaintiff Ryan L.[3] (Plaintiff), filed for disability insurance benefits (DIB) on April 6, 2019, alleging an onset date of May 8, 2018.  Tr. 221-24.  Benefits were denied initially, Tr. 115-17, and upon reconsideration, Tr. 119-21.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on July 18, 2022.  Tr. 44-76.  On August 12, 2022, the ALJ issued an unfavorable decision, Tr. 13-36.

---

[2] Plaintiff's brief is labeled as a Motion for Summary Judgment.  ECF No. 12.  The supplemental rules for Social Security actions under 42 U.S.C. § 405(g) went into effect on December 1, 2022; Rule 5 and Rule 6 state the actions are presented as briefs rather than motions.  Fed. R. Civ. P. Supp. Soc. Sec. R. 5, 6.

[3] The court identifies a plaintiff in a social security case only by the first name and last initial in order to protect privacy.  *See* Local Civil Rule 5.2(c).

ORDER - 2

The Appeals Council denied review on October 4, 2022.  Tr. 1-6.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearings and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1985 and 32 years old on the alleged onset date.  Tr. 30. He graduated from high school and attended some college.  Tr. 51.  He served in the Marines from January 2004 until August 2007. Tr. 50-51.  He last worked for an auto dealer as a parts clerk in the service department.  Tr. 49.  He used to have seizures once or twice a month until May 2019 when he stopped drinking.  Tr. 51-52.  In May 2018, he had a seizure and fell off a ladder.  At that point his memory "got really bad." Tr. 52.  It would take a couple of days to recover from a seizure. Tr. 53.  He continues to have episodes of "spacing out" or "blacking out" three to four times a day.  Tr. 53-55.  He has problems with his memory, understanding, and communicating, as well as problems with his vision.  Tr. 55, 60.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158

ORDER - 3

(9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in

ORDER - 4

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the

ORDER - 6

Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commiss0ioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity May 8, 2018, the alleged onset date.  Tr. 18.  At step two, the ALJ found that Plaintiff has the following severe impairments:  alcohol use disorder, chronic liver disease, seizure disorder, visual disturbance, traumatic brain injury (TBI) and neurocognitive disorder.  Tr. 18.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 20.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> The claimant must avoid climbing of ladders, ropes, or scaffolds, driving a motor vehicle as part of his job duties, and exposure to workplace hazards such as unprotected heights and dangerous moving machinery. The claimant is limited to frequent near and far visual acuity. The claimant can perform and carry out simple, routine, and repetitive tasks and use occasional routine judgment, defined as being able to make simple work-related decisions, in a predictable work environment with only occasional simple workplace changes, no production or assembly line pace (non-worker controlled pace), and no more than occasional interaction with coworkers, supervisors, and the public.

Tr. 22.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 29. After considering Plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as housekeeping cleaner, marker, and production assembler. Tr. 30-31. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 8, 2018, through the date of the decision. Tr. 32.

ORDER - 8

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act.  ECF No. 12. Plaintiff raises the following issues for review:

    1.   Whether the ALJ properly considered the Listings;

    2.   Whether the ALJ properly considered the lay witness statement;

    3.   Whether the ALJ properly considered Plaintiff's symptom testimony; and

    4.   Whether the ALJ made a legally sufficient step five finding.

ECF No. 12 at 5.

**DISCUSSION**

**A.    Listing 12.02**

Plaintiff contends the ALJ erred in evaluating Listing 12.02 for neurocognitive disorders.  ECF No. 12 at 8-12.  At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals an impairment contained in the listings.  *See* 20 C.F.R. § 404.1520(d).  The listings describe "each of the major body systems impairments [considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525.  An impairment "meets" a listing if it meets all of the specified medical criteria.  *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990); *Tackett,* 180 F.3d at 1098.  An impairment that manifests only some of the

criteria, no matter how severely, does not qualify. *Sullivan,* 493 U.S. at 530; *Tackett,* 180 F.3d at 1099.

An unlisted impairment or combination of impairments "equals" a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present. *Sullivan*, 493 U.S. at 531; *see* 20 C.F.R. § 404.1526(b). "Medical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Tackett*, 180 F.3d at 1099. An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings are present equal in severity to all of the criteria for the one most similar listed impairment. *Sullivan,* 493 U.S. at 531; *see* 20 C.F.R. § 404.1526(b). The claimant bears the burden of establishing an impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ found that Plaintiff's conditions do not meet or equal Listing 12.02. In order to satisfy this listing, a claimant must meet the criteria of paragraph A, and paragraph B or C.[4]  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02.  The ALJ did not specifically discuss the criteria of paragraph A, suggesting there is no dispute that the record contains medical documentation of a significant cognitive decline in one

---

[4] Paragraph C is not at issue in this case.

ORDER - 10

or more of the following areas:  complex attention, executive function, learning and memory, language, perceptual-motor, or social cognition.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.

The ALJ evaluated the criteria of paragraph B, noting that to satisfy the B criteria, mental impairments must result in one extreme limitation or two marked limitations in four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  Tr. 21; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02B.  An "extreme" limitation means an inability to function independently, appropriately, or effectively, and on a sustained basis.  A "marked" limitation means the ability to function independently, appropriately, or effectively, and on a sustained basis is seriously limited.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F2.  The ALJ found that Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, so the paragraph B criteria are not satisfied.  Tr. 22.

Plaintiff argues that the ALJ erred in evaluating his functioning in the paragraph B category of understanding, remembering, or applying information.  ECF No. 12 at 8-12.  The ALJ found that Plaintiff has a "moderate" limitation in that area, meaning that Plaintiff's ability to function independently, appropriately, or effectively, and on a sustained basis in this area is fair.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F2.  In support, the ALJ noted Plaintiff's own report that he can

prepare meals, complete household chores, remember to go to doctor's appointments and take medications, shop in stores, manage finances, play video games, read, follow instructions, and watch television.  Tr. 21 (citing Tr. 286-96, 778-91, 1031-36; *see* Tr. 55).  The ALJ also noted findings from providers showing Plaintiff has a logical, goal directed thought process, was able to follow instructions from healthcare providers, comply with treatment, and respond to questions from medical providers.  Tr. 21 (citing Tr. 351-53, 408-10, 420-21, 481, 480-82, 726, 782-86, 869-1030, 1032-35).  These records reasonably support the ALJ's conclusion that Plaintiff has a moderate limitation in the area of understanding, remembering, or applying information, such that Plaintiff's ability to ability to function independently, appropriately, or effectively, and on a sustained basis in this area is fair.

Plaintiff cites clinical findings from a July 2019 neuropsychological evaluation by Jameson Lantz, Ph.D., and argues that they correspond to a finding of an "extreme" limitation in the ability to understand, remember, or apply information. ECF No. 12 at 12; Tr. 781-88.  The ALJ considered Dr. Lantz's assessment and noted the below average to borderline scores on a battery of assessment testing.  Tr. 26.  However, the ALJ also noted Dr. Lantz found numerous inconsistencies in the results, information from intake, other assessments, and Plaintiff's reported history. Tr. 26.  In particular, the ALJ noted performance significantly varied regarding attention and concentration, which Dr. Lantz indicated created a question as to

whether the test results accurately depicted Plaintiff's abilities, or whether they could be attributed to an attention deficit, mood instability, substance use, poor effort, or some combination of factors.  Tr. 26 (citing Tr. 783-84).

Plaintiff asserts that the ALJ "attempts to cast doubt on the veracity of the neuropsychological testing," ECF No. 12 at 11, yet it was Dr. Lantz who noted, "variable effort," "poor effort," "results obviously were inconsistent with information gleaned from clinical intake," "poor effort was suspected," "additional evidence of inconsistencies," and MMPI-II testing resulted in "classic 'fake bad' configuration."  Tr. 782-84.  As to attention and concentration, Dr. Lantz stated, "[s]uffice it to say that this examinee's attention and concentration performances varied rather significantly.  Such variabilities gave rise to the potential for an attention and concentration confound, which would be secondary to an attention deficit, mood instability, substances, poor effort, or some combination of such factors."  Tr. 783.  Thus, it was Dr. Lantz who questioned whether testing was an accurate reflection of Plaintiff's ability and the ALJ reasonably considered his statements in evaluating the contents of his report.

Plaintiff also cites raw data regarding memory scores from Dr. Lantz's report and conclusively asserts that, "[t]hese scores are at least three standard deviations below the mean, corresponding to an extreme limitation in the paragraph "B" criteria to understand, remember, or apply information and thus meeting the listing."  ECF No. 12 at 11-12.  Plaintiff's argument fails for several reasons.  First, Plaintiff has

identified no basis to conclude that the scores referenced support the conclusion that "three standard deviations below the mean" corresponds to an extreme limitation within the meaning Listing 12.02.[5]  Second, Dr. Lantz considered the results of memory testing and concluded that, "[t]hese results obviously were inconsistent with information gleaned from clinical intake." Tr. 783.  Third, Plaintiff does not address his actual functioning in the area of understanding, remembering, and applying information which was cited by the ALJ in support of the step three finding.  Tr. 21. The ALJ's citation to activities such as attending appointments, following instructions, playing video games, and other activities was reasonably considered in determining that Plaintiff does not have an "extreme" limitation making him unable to understand, remember, or apply information.  The ALJ's finding regarding Listing 12.02 is supported by substantial evidence.

Plaintiff further contends the ALJ erred by stating that "there is no mention of any significant learning barriers or issues with cognition or memory" in assessing a moderate limitation.  Tr. 21; ECF No. 12 at 20.  Defendant concedes the ALJ misstated the record in this regard, but notes that the ALJ also found Plaintiff's severe impairments include traumatic brain injury and neurocognitive disorder.  ECF No. 18 at 20.  Additionally, the ALJ noted later in the decision that Plaintiff

---

[5] Plaintiff cites 20 C.F.R. § 404.926a which describes how functional equivalence for children is evaluated and is not applicable in this case.  ECF No. 12 at 12.

ORDER - 14

"received below average to borderline scores on a battery of assessment testing at his psychological consultative examination." Tr. 26. Thus, it is apparent from the decision that the ALJ acknowledged limitations regarding cognition and memory, notwithstanding the misstatement at step three. "Even when part of an ALJ's five-step analysis is not linguistically completely clear or exhaustively complete, or precisely factually accurate, some errors are legally harmless, such as errors which do not affect the ultimate result of the analysis." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir.2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir.1990); *Booz v. Sec'y of Health and Human Servs.*, 734 F.2d 1378, 1380 (9th Cir.1984)). Here, the ALJ's statement is clearly contradicted by other findings in the decision, and this misstatement does not change the outcome of the step three finding or the sequential evaluation overall.

Lastly, Plaintiff argues in passing that "remand is required for elicitation of medical expert testimony regarding to determine [sic] whether Mr. Latham meets or equals a Listing." ECF No. 12 at 12. The ALJ found that no acceptable medical source concluded that Plaintiff has an impairment or combination of impairments that meets or equals the criteria of any listed impairment. Tr. 20. It is Plaintiff's burden to establish that an impairment or combination of impairments meets or equals the criteria of a listed impairment. *Burch*, 400 F.3d at 683. Plaintiff has cited no authority indicating that the ALJ erred by not calling a medical expert in this

case.[6]  The Court concludes the ALJ's step three finding is legally sufficient and based on substantial evidence in the record.

**B.    Symptom Testimony**

Plaintiff contends the ALJ failed to properly consider his subjective complaints.  ECF No. 12 at 15-17.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

---

[6] Plaintiff cites SSR 17-2p, which discusses equivalence.  ECF No. 12 at 12.  The Ruling provides that if an ALJ believes that the evidence does not reasonably support a finding that the individual's impairment medically equals a listed impairment, the ALJ is not required to obtain testimony from a medical expert to make the step three finding.  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

ORDER - 16

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *9 (effective October 25, 2017); 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, at *2.

First, the ALJ found the medical evidence indicates a functional capacity higher than alleged. Tr. 24-26. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680.

The ALJ discussed the physical diagnostic studies, imaging, and exam findings which showed no signs of chronic pain and were essentially unremarkable, including MRI and CT imaging of the brain, other than signs of liver disease and mild pulmonary hyper-expansion. Tr. 24-25 (citing *e.g.*, Tr. 347, 364, 403-04, 413,

ORDER - 18

418, 424, 436, 817, 996, 1043-51, *etc.*).  The ALJ's findings regarding his physical condition are not challenged by Plaintiff and are supported by substantial evidence.

The ALJ also discussed the mental health record, noting diagnoses of mood disorder, alcohol-induced mild neurocognitive disorder, possible Wernicke's encephalopathy, and unspecified depressive disorder.  Tr. 25.  The ALJ observed that mental status exam findings and psychiatric notations in the medical record were "rather benign and unexceptional."  Tr. 25 (citing Tr. 352, 438, 632, 643-44, 655-56, 666, 704, 726, 733, 750, 782-86, 897-98, 1009, 1010, 1032-35).  As discussed *supra*, the ALJ noted Dr. Lontz's psychological exam findings identified significant inconsistencies regarding attention and concentration which could be attributed to an attention deficit, mood instability, substance use, poor effort, or some combination of factors.  Tr. 26, 783.  The ALJ's findings are supported by substantial evidence.

Plaintiff argues that the ALJ did not consider the "waxing and waning" of his symptoms and suggests that his treatment record "would not be expected to show remarkable findings" in various mental health categories.  ECF No. 12 at 16.  However, although the ALJ found the medical findings suggest a functional capacity significantly higher than alleged, the ALJ considered Plaintiff's conditions as a whole and addressed "any fluctuation of the claimant's symptoms" and other factors in the RFC finding.  Tr. 26.  Further, Plaintiffs simple assertion that the ALJ "rejected" Plaintiff's mental health symptoms based on waxing and waning

symptoms is not demonstrated with references to the record or the ALJ's decision. ECF No. 12 at 16.  Plaintiff argues for another interpretation of the evidence but does not establish that the ALJ's analysis contains errors of fact or law.  The ALJ, not this court, is responsible for reviewing the evidence and resolving conflicts or ambiguities.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989); *see also Richardson v. Perales*, 402 U.S. 389, 400 (1971).

Second, the ALJ found that Plaintiff's routine and conservative treatment is not consistent with his allegations regarding the severity and limiting effects of his symptoms.  Tr. 26.  Claims about disabling pain are undermined by favorable response to conservative treatment.  *Tommasetti*, 533 F.3d at 1039-1040; *see also Parra*, 481 F.3d at 750–51 (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").  The ALJ discussed Plaintiff's physical treatment, noting that it was conservative and relatively effective in controlling symptoms, especially his seizures which stopped once he quit alcohol.  Tr. 25 (citing Tr. 779, 1047).  The ALJ noted that Plaintiff's mental health treatment was routine and conservative and that his symptoms were generally well controlled on medication.  Tr. 26.  Once he quit drinking and his seizures were controlled, Plaintiff reported that he felt his memory

ORDER - 20

was returning.  Tr. 26 (citing 644, 733; 1043).  Plaintiff does not challenge these

findings.  This is a clear and convincing reason supported by substantial evidence.

Third, the ALJ found that Plaintiff's activities of daily living are not

consistent with disabling symptoms and limitations.  Tr. 27.  It is reasonable for an

ALJ to consider a claimant's activities which undermine claims of totally disabling

pain in assessing a claimant's symptom complaints.  *See Rollins*, 261 F.3d at 857.

However, it is well-established that a claimant need not "vegetate in a dark room" in

order to be deemed eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th

Cir. 1987).  Notwithstanding, if a claimant is able to spend a substantial part of his

day engaged in pursuits involving the performance of physical functions that are

transferable to a work setting, a specific finding as to this fact may be sufficient to

discredit an allegation of disabling excess pain.  *Fair,* 885 F.2d at 603.  Furthermore,

"[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they

may be grounds for discrediting the claimant's testimony to the extent that they

contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.

The ALJ observed that Plaintiff reported he can, for example, care for his

children, complete household chores and errands, manage finances, spend time with

friends and family, play video games, read, and follow instructions.  Tr. 27 (citing

286-96, 778-91, 1031-36; *see* Tr. 55.  The ALJ found these activities are inconsistent

with the level of limitation alleged.  Tr. 27; *see* Tr. 23.  Plaintiff argues the ALJ

failed to identify any activities inconsistent with his allegations and did not explain

how his "modest" activities contradicted his testimony.  ECF No. 12 at 16.  It is true that the ALJ is required to make "specific findings" regarding Plaintiff's daily activities involve skills that could be transferred to the workplace.  *Burch*, 400 F.3d at 681.  Even assuming that the ALJ failed to do so here, any error was harmless because the ALJ provided other valid reasons to discount Plaintiff's testimony.  *See Molina*, 674 F.3d at 1115.

Lastly, Plaintiff argues the ALJ "held the claimant to an impermissibly high legal standard" by stating three times that Plaintiff's physical and mental impairments "would not prevent performance of all work-related activities."  ECF No. 12 at 15 (citing Tr. 24, 25, 26).  Plaintiff observes that "this is not the standard for disability."  ECF No. 12 at 15 (citing SSR 96-8p).  Indeed, the ALJ's discussion of the evidence begins with a recitation of the correct legal standard, including reference to Social Security Ruling 96-8p, 1996 WL 362207 (effective July 2, 1996), and notes that the RFC finding "reflects the most the claimant can do on a sustained basis."  Tr. 22.  Plaintiff does not explain how the ALJ's statements are inaccurate or reflect an improper "standard" of evaluating Plaintiff's symptom statements or the RFC.  The ALJ's determination that Plaintiff's impairments do not prevent him from performing all work-related activities means exactly that – which is consistent with the ALJ's determination that Plaintiff is capable of performing activities set forth in the RFC finding.  Tr. 22.  The Court concludes no reasonable reading of the decision

ORDER - 22

leads to the conclusion that the ALJ applied an improper standard for disability in evaluating Plaintiff's symptom statements.

**C.    Lay Witness Statement**

Plaintiff contends the ALJ improperly rejected the lay witness statement of his wife, Amber L.  ECF No. 12 at 12-14.  The regulations indicate that ALJs will consider evidence from nonmedical sources when evaluating a claim of disability. *See, e.g.*, 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3).  An ALJ may not reject "significant probative evidence" without explanation.  *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  However, under the revised regulations, ALJs are "not required to articulate" how they evaluate evidence from nonmedical sources using the same factors applicable to medical opinion evidence. 20 C.F.R. § 404.1520c(d).  The Ninth Circuit has not yet clarified whether an ALJ is still required to provide "germane reasons" for discounting lay witness testimony. *See Wilson v. O'Malley*, No. 23-35463, 2024 WL 2103268, at *2 (9th Cir. May 10, 2024).  It has, however, continued to apply the germane reasons standard.  *See, e.g.*, *MacArthur v. Kijakazi*, No. 23-35050, 2023 WL 8519119, at *2 (9th Cir. Dec. 8, 2023) ("An ALJ may discount lay witness opinion evidence by providing reasons germane to each witness for doing so.") (citing *Molina*, 674 F.3d at 1111) (internal quotations omitted); *Eichenberger v. Kijakazi*, No. 22-35937, 2023 WL 5928483, at *2 (9th Cir. Sept. 12, 2023) (ALJ's clear and convincing reasons for rejecting the claimant's testimony sufficed as germane reasons for rejecting lay testimony);

ORDER - 23

*Alexander v. Kijakazi*, No. 22-35737, 2023 WL 4490340, at *2 (9th Cir. July 12, 2023) (ALJ's findings that lay witness statements conflicted with the medical evidence and were inconsistent with the claimant's activities satisfied the "germane reasons" standard).

The ALJ found that although Amber L.'s statements are consistent with Plaintiff's daily activities and allegations, they "simply cannot outweigh" the medical evidence regarding the extent of Plaintiff's functional limitations. Tr. 29. The ALJ observed that lay witness statements are "based upon casual observation, rather than objective medical examination and testing," do not provide a function-by-function assessment of a claimant's abilities, and are not given by an acceptable medical source. Tr. 29. These are not germane reasons for rejecting the lay witness statement because an ALJ is directed to consider evidence from nonmedical sources. 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3).

The ALJ also found that "there is likely some degree of bias due to the nature of their relationship [as husband and wife]." Tr. 29. A witness' personal relationship with a claimant is not a valid reason to discount the witness' observations. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir.2009) (noting that "regardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition'" (citation omitted)); *Smolen v. Chater*, 80 F.3d

1273, 1289 (9th Cir. 1996) ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.  To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members.") (citation omitted).  The ALJ's reference to bias, without more, is an improper basis to reject the lay witness statement.

Nevertheless, the ALJ found that Amber L.'s statement is consistent with Plaintiff's symptom statements.  Tr. 27.  Since the ALJ provided clear and convincing reason supported by substantial evidence for discounting Plaintiff's symptom claims, it follows that any error in rejecting Amber L.'s statement is harmless.  *Molina*, 674 F.3d at 1122  ("Although the ALJ erred in failing to give germane reasons for rejecting the lay witness testimony, such error was harmless given that the lay testimony described the same limitations as Molina's own testimony, and the ALJ's reasons for rejecting Molina's testimony apply with equal force to the lay testimony."); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (finding harmless error with respect to non-germane reason because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony").  Thus, any error in evaluating the lay witness statement is harmless.

**D.     Step Five**

Plaintiff argues the ALJ erred at step five because the vocational expert's opinion that plaintiff can return to past relevant work was based on an incomplete hypothetical.  ECF No. 12 at 17-18.  The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The hypothetical should be "accurate, detailed, and supported by the medical record."  *Tackett*, 180 F.3d at 1101.  The ALJ is not bound to accept as trued the restrictions presented in a hypothetical question propounded by a claimant's counsel.  *Osenbrook*, 240 F.3d at 1164; *Magallanes*, 881 F.2d at 756-57; *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence.  *Magallanes*, 881 F.2d at *id.*

Plaintiff's argument assumes that the ALJ erred in evaluating his symptom statements and the lay witness statement.  ECF No. 12 at 17-18.  Plaintiff alleges the ALJ "improperly rejected limitations" of being off task and unproductive more than 10% of the work week, absent more than six time per year, unscheduled tardiness, the need for redirection or close supervision, or responding to redirection by getting frustrated and walking away from the workstation."  ECF No. 12 at 17-18.  However, Plaintiff has not shown that any these limitations were established in the record or improperly rejected by the ALJ.  The RFC finding is legally sufficient and

supported by substantial evidence, discussed *supra*.  The ALJ therefore properly excluded other limitations from the RFC and hypothetical to the vocational expert. The hypothetical contained the limitations the ALJ found credible and supported by substantial evidence in the record.  The ALJ's reliance on testimony the VE gave in response to the hypothetical was therefore proper.  *See id.*; *Bayliss v. Barnhart*, 427 F. 3d 1211, 1217-18 (9th Cir. 2005).

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. The Court hereby affirms the Commissioner's decision.

Accordingly,

1. Plaintiff's Brief, **ECF No. 12**, is **DENIED**.

2. Defendant's Brief, **ECF No. 18**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for the Defendant and the file shall be **CLOSED**.

**DATED** September 13, 2024.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER - 27